City of Chicago, Plaintiff-Appellee, v. Jacob Berg, Defendant-Appellant.

Gen. No. 49,222.

First District, Third Division.

May 7, 1964.

Harold Z. Kaplan, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Harry H. Pollack, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This appeal arises from a penalty assessed against the defendant, Jacob Berg, in the Municipal Court of Chicago. Berg had been driving his automobile in the City of Chicago when he was stopped by an officer of the City's police department and informed that one of the auto's headlights was not on. The officer gave him a traffic ticket charging him with a violation of chapter 27, section 346(a) of the Municipal Code of Chicago: a traffic regulation requiring anyone driving an automobile within the City between sunset and dawn to display two operating headlights visible for a distance of 500 feet in the direction in which the vehicle is proceeding.

During his trial Berg was held in contempt of court for refusing to testify against himself and was summarily incarcerated therefor; at the conclusion of the trial he was found guilty of the traffic violation and a $10 fine was imposed.

His appeal was originally taken directly to the Supreme Court because constitutional questions had been raised by him at the trial, and comes to us now by virtue of transfer from that court. The briefs filed there are now before us and the constitutional questions are, of course, argued, but these we cannot consider here. In Illinois constitutional questions are appealed directly to the Supreme Court and the Appellate Court has no power to rule upon them. City of Chicago v. Sayer, 330 Ill App 181, 70 NE2d 870; Cooper v. Pedersen, 29 Ill App2d 384, 173 NE2d 549. When a case involving constitutional questions is

transferred to this court it is presumed that the Supreme Court determined either that no constitutional questions were involved or that they were not material to the disposition of the appeal. City of Chicago v. Campbell, 27 Ill App2d 456, 170 NE2d 19.

 The defendant also argues another point in his brief which cannot be considered—he attacks the validity of the ordinance under which he was found guilty. This point was not raised in the trial court and cannot be considered on appeal. Consoer, Townsend & Associates v. Addis, 37 Ill App2d 105, 185 NE2d 97. There is, however, a point which, although not raised in the trial court can be considered for the first time on appeal: that the judgment is void because it is based on a void complaint. A judgment based on a defective indictment or information is void and a void judgment may be attacked in a court of review. People v. Fain, 30 Ill App2d 270, 173 NE2d 825. The same may be said for a complaint in a quasi-criminal action, such as the one presently before us which, although resembling a criminal prosecution in some respects, follows civil rules of procedure. City of Chicago v. Kenney, 35 Ill App 57; Baldwin v. City of Chicago, 68 Ill 418; Village of Maywood v. Houston, 10 Ill2d 117, 139 NE2d 233; City of Chicago v. Porter, 26 Ill App2d 323, 168 NE2d 468. In a civil case a void judgment, decree or order may be vacated at any time. Bratkovich v. Bratkovich, 34 Ill App2d 122, 180 NE2d 716; Reynolds v. Burns, 20 Ill2d 179, 170 NE2d 122; McBreen v. Iceco, Inc., 12 Ill App2d 372, 139 NE2d 845. A quasi-criminal complaint need not be drawn with the precision of an indictment or information and, if it is unclear, or uncertain, or if it is deficient in some respect, a defendant must object to it by proper motion so that the plaintiff-municipality may have the opportunity to amend. If no objec-

254

tion is made in the trial court the objection is deemed to have been waived. City of Chicago v. Campbell, 27 Ill App2d 456, 170 NE2d 19. If, however, a quasi-criminal complaint is so basically defective that it does not support the judgment, objection may be raised for the first time in a court of review.

The only complaint received by the defendant was the traffic ticket given him at the time of his arrest. The ticket was the form then in general use throughout the City in traffic violation cases. It was a printed form with certain blank spaces to be filled in and certain small boxes which could be checked by the arresting officer. The ticket gave the officer a good deal of leeway including an option, in the case of many traffic offenses, to bring the charge either under the traffic regulations of the City or those of the State of Illinois. It was an all-purpose form with space provided for information concerning the causes of accidents and conditions that might increase the seriousness of violations. The ticket also served the dual purpose of complaint and summons, although the far greater part of it was made up of the complaint. The summons was confined to a small box approximately 1½″ x 2″ in size, on the lower right side of the ticket. It was captioned "Court Appearance" and, when filled out, informed the person arrested of the date, the hour and the room of the traffic court where the case would be called.

▇ The charge against Berg was not made in the name of the City of Chicago, even though the complaint portion of the ticket stated that he had violated a municipal ordinance. The name of the City of Chicago as plaintiff appeared nowhere on the ticket. The plaintiff was the State and the charge was made "in the name and by the authority of the People of the State of Illinois." This was a fundamental error which

255

rendered the complaint void ab initio. In People v. Stringfield, 37 Ill App2d 344, 185 NE2d 381, this court said:

"Actions for violations of ordinances must be brought in the corporate name of the municipality and prosecutions of state offenses must be brought in the name of the people of the state. Ill Rev Stats, 1961, ch 24, sec 1–2–7; Constitution of the State of Illinois, art VI, sec 33."

The statute cited in the Stringfield case is part of the Cities and Villages Act and is as follows:

"All actions brought to enforce any fine, imprisonment, penalty or forfeiture under any ordinance of any municipality, shall be brought in the corporate name of the municipality as plaintiff."

The section of the constitution cited, art VI, § 33, provided (at the time of the Stringfield case and at the time the ticket was given to Berg in the present case) the following:

". . . all prosecutions shall be carried on: *In the name and by the authority of* the *People of the State of Illinois;* and conclude: *Against the peace and dignity of the same.*"

The Stringfield decision was not new or novel; it has long been held that the constitutional provision requiring prosecutions to be brought in the name and by the authority of the people is applicable only to criminal offenses in violation of the state laws; likewise it has long been held that actions to enforce municipal ordinances must be brought in the corporate name of the municipality. Town of Lewiston v. Proctor, 27 Ill 414; City of Chicago v. Kenney, 35 Ill App 57; Town of Partridge v. Snyder, 78 Ill 519. The

256

City argues, however, that since the ticket was a summons as well as a complaint the words, "In the name and by the authority of the People of the State of Illinois" were used to comply with another provision of article VI, section 33. The provision referred to is that, "All process shall run: In the name of the People of the State of Illinois . . ." As heretofore pointed out, the summons portion of the ticket was confined to a small box captioned, "Court Appearance" and the words, "In the name of the People of the State of Illinois" do not appear in this box. Furthermore, the words we are considering are not just "In the name of the people of the State of Illinois" but are "In the name and *by the authority* of the People of the State of Illinois" and they appear on top of the ticket in conjunction with the complaint. The words of the complaint follow in this sequence: "In the name and by the authority of the People of the State of Illinois the undersigned, who being duly sworn upon his oath states that Jacob Berg . . . on Mon. 4/16/62 at 9 p. m. did then and there drive and operate a certain motor vehicle, to wit. . . ." The ticket concluded with these words: ". . . against the peace and dignity of the people of the State of Illinois."

It is clear that the complaint was in behalf of the people of this state and that its form is that of a criminal complaint; it was not a civil complaint on behalf of the City, as it should have been. The failure to bring the complaint in the name of the correct plaintiff was a substantial, not a minor or technical, defect, and the judgment based on the complaint is void and must be reversed.

When the case was called for trial on the morning of October 25, 1962, the officer who had made the arrest and subscribed to the complaint was not present. The City was without a witness and in order to

make out a case called Berg under section 60 of the Civil Practice Act. After identifying him, the attorney for the City started to question him concerning the offense for which he had been arrested. The defendant declined to answer on the ground that he might incriminate himself. The court instructed him to answer and warned him that if he did not there was a "way of making him do so." The defendant persisted in his refusal, whereupon the attorney for the City requested that he be held in contempt of court. The court complied and asked the city attorney what he recommended. The attorney suggested that Berg be held in custody and the court forthwith ordered the bailiff to take him into custody. He was confined until the afternoon when the court dismissed the contempt charge. The arresting officer was then present and the case proceeded to trial.

■ Berg's fear of self-incrimination was not unfounded. He was a defendant, accused of a violation of an ordinance which upon conviction carried a fine up to $200, and incarceration if the fine remained unpaid. He was also subject to prosecution for the same offense, a misdemeanor, under the statute of the State. Ill Rev Stats 1961, c 95½, §§ 200 and 234. The violation of a statute and the violation of an ordinance by the same act are separate offenses, separately punishable. City of Evanston v. Wazau, 364 Ill 198, 4 NE2d 78; City of Chicago v. Union Ice Cream Mfg. Co., 252 Ill 311, 96 NE 872.

The privilege against self-incrimination in criminal cases, provided for in the Fifth Amendment to the Constitution of the United States and in Article II, sec 10 of the constitution of the State of Illinois, has been interpreted as extending beyond actions that are criminal per se. 58 Am Jur, Witnesses, sec 43; 37 ILP, Witnesses, sec 142. In People v. Nachowicz, 340 Ill 480, 172 NE 812, the court said:

258

"Section 10 of Article 2 of the constitution provides that no person shall be compelled in any criminal case to give evidence against himself. This constitutional privilege of silence is an absolute guarantee to every person appearing as a witness in any court in this State against being required to answer any question the answer to which will expose or tend to expose him to any penalty, fine, forfeiture or punishment, or tend to accuse him of any crime or misdemeanor, or which will be evidence which will form a link in a chain of evidence to convict him of a criminal offense."

The constitutional protection from being compelled to furnish evidence against oneself has been upheld in civil actions for penalties in cases involving federal laws, state laws and municipal ordinances. Lees v. United States, 150 US 476 (1893) was an action to recover a penalty for the violation of an act of Congress prohibiting the importation of aliens under contract to perform labor. The court said:

"This, though an action civil in form, is unquestionably criminal in its nature, and in such a case a defendant cannot be compelled to be a witness against himself."

See also, Boyd v. United States, 116 US 616 (1886). Robson v. Doyle, 191 Ill 566, 61 NE 435 (1901) was an action to recover penalties imposed by statute for gambling. The court said:

"A defendant may refuse to answer, not only as to facts directly incriminating him, but as to any fact which might form a link in the chain of evidence establishing his liability to punishment, penalty or forfeiture."

259

See also Rodisch v. Koethe, 178 Ill App 286 (1913) wherein the court stated in a suit to recover a penalty for wrongfully withholding a will and codicil:

"Where the suit, though civil in form, is brought to recover penalties for alleged offenses against the laws of the State, they are criminal cases within the meaning of the Constitution."

City of Chicago v. Lord, 3 Ill App2d 410, 122 NE2d 439 (1954), affirmed 7 Ill2d 379, 130 NE2d 504, was an action to recover a penalty for exhibiting for profit in a public place of amusement obscene motion picture films, in violation of a municipal ordinance. The issue concerned the illegal search and seizure of the films. The court affirmed the suppression of the evidence by the trial court and rejected the City's argument that the guaranty against compulsory self-incrimination could be invoked only in criminal cases and not in proceedings of a civil nature. In doing so the court spoke of the close correlation between, and the complementary nature of, sections 6 and 10 of article II of the Illinois Constitution and the respective guaranties of the Fourth and Fifth amendments to the Constitution of the United States against unreasonable searches and seizures and self-incrimination. The court also said that the distinction between a criminal proceeding and a civil one for the imposition of a penalty was somewhat illusory and stated:

"An action for violation of a City ordinance like other proceedings for penalties and forfeitures because of the violation of a public law, is criminal in nature."

(Compare: City of Chicago v. Cross, 345 Ill App 298, 102 NE2d 753, 1952, where the same court, in an

260

opinion written by the same author, held to the contrary.)

█ The defendant had a right to invoke his constitutional privilege against self-incrimination and the trial court was in error in threatening to punish him if he did not aid the City in obtaining his own conviction, in finding him in contempt of court and in depriving him of his liberty. A court has no jurisdiction to punish for contempt where no contempt has been committed.

The judgment is reversed.

Reversed.

SCHWARTZ, P.. J. and SULLIVAN, J., concur.